08-4966-cv
**Rodriguez v. Custodio**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: August 25, 2009        Decided: February 18, 2010)

Docket No. 08-4966-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WAGNER & WAGNER, LLP, DANIEL J. BAURKOT, ESQ.,

<u>Non-Party-Appellants</u>,

DAYANARA RODRIGUEZ, an infant by her Parents and Natural Guardians, EVELYN CUSTODIO and LEE RODRIGUEZ, EVELYN CUSTODIO, individually, and LEE RODRIGUEZ, individually,

<u>Plaintiffs</u>,

v.

ATKINSON, HASKINS, NELLIS, BRITTINGHAM, GLADD & CARWILE, P.C.,

<u>Non-Party-Appellee</u>,

INTERNATIONAL SALES, INC., INTERNATIONAL GROUP OF COMPANIES,

<u>Defendant-Cross-Claimant-Cross-Defendants</u>,

TARGET CORPORATION,

<u>Defendant-Third-Party-Plaintiffs</u>,

ROYAL CONSUMER INFORMATION PRODUCTS, INC.,

<u>Defendant-Cross-Defendant-Cross-Claimant-Third-Party-Plaintiffs</u>.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER, POOLER, and KATZMANN, <u>Circuit Judges</u>.

Appeal from an order of the United States District Court for the Eastern District of New York (John Gleeson, <u>Judge</u>)

determining attorneys' fees after an infant compromise hearing. Appellants argue that the district court inappropriately inquired into the fee splitting agreements among the attorneys and then, after concluding a violation of New York Disciplinary Rule 2-107 had occurred, erroneously took the amount of fees that would go to plaintiffs' original attorney and instead awarded them to the plaintiffs. On September 1, 2009, we issued an order affirming the district court and issuing the mandate forthwith. Given evidence that the annuity called for by the settlement had not been established, we appointed pro bono counsel to represent the plaintiffs in all matters in these proceedings. Our order stated that an opinion would follow. We now issue this opinion.

EDWARD WAGNER (Michael P. Atkinson, on the brief), Wagner & Wagner, LLP, Staten Island, New York (Daniel J. Baurkot, Basking Ridge, New Jersey), for Non-Party-Appellants.

STACIE L. HIXON, Atkinson, Haskins, Nellis, Brittingham, Gladd, & Carwile, Tulsa, Oklahoma, for Non-Party-Appellees.

WINTER, Circuit Judge:

Wagner & Wagner, LLP, and Daniel J. Baurkot, Esq., appeal from Judge Gleeson's adoption of Magistrate Judge Mann's Report and Recommendation.

After an infant compromise hearing, Judge Mann awarded $107,654.56 in attorneys' fees and $49,866.84 in expenses to Atkinson, Haskins, Nellis, Brittingham, Gladd, & Carwile, P.C. (the "Atkinson firm" or "appellees"), and $133,286.60 in

2

attorneys' fees and $2,378.86 in expenses to Wagner & Wagner, LLP.  She denied an award of fees to Baurkot because Wagner & Wagner's sharing of the fees with Baurkot was not properly disclosed to plaintiffs and Baurkot had performed no services of value in the litigation.  Therefore, she concluded, the fee sharing agreement was in violation of New York Disciplinary Rule 2-107 ("DR 2-107").[1]  The magistrate judge awarded Baurkot's portion of the fee to the plaintiffs.  Appellants then took this appeal.  The Atkinson firm has filed a brief responding to Wagner & Wagner's argument that if we affirm the award to the plaintiffs, the fee splitting agreement between Wagner & Wagner and the Atkinson firm requires a redistribution of fees between the two firms.

On September 1, 2009, we issued an order affirming the district court's order.  Given the nature of this appeal -- taken by attorneys who continue to represent the plaintiffs from a judgment in plaintiffs' favor and evidence that the annuity called for in the settlement had not been established -- we appointed pro bono counsel to represent the plaintiffs and forbade appellants from contacting plaintiffs except through pro bono counsel.  Our order stated that an opinion would follow. This is that opinion.

                    BACKGROUND

_____

[1]New York modified its disciplinary code effective April 1, 2009, but the revisions would not affect the outcome in this matter.  The principles embodied in former DR 2-107 are now contained in Rule 1.5(g)-(h), N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.

a) The Underlying Action

After his two-year-old daughter was injured by a paper shredder, Lee Rodriguez contacted Baurkot to discuss legal assistance. On April 4, 2005, Baurkot contacted Wagner & Wagner, after which representatives of Wagner & Wagner met with Rodriguez and his wife, Evelyn Custodio, the mother of the injured girl. During that meeting, plaintiffs retained Wagner & Wagner on a one-third contingency-fee basis to reach a settlement or bring an action on behalf of their daughter and themselves as plaintiffs. Appellants then executed a fee agreement between themselves, providing that Wagner & Wagner would receive two-thirds of any recovered fee and Baurkot would receive the remaining one-third.

In 2006, the Atkinson firm, which had experience with similar cases, contacted Wagner & Wagner. After consultation with Baurkot and the plaintiffs, Wagner & Wagner retained the Atkinson firm. The retention agreement provided that the Atkinson firm would receive 35% of any contingency fee received, while Wagner & Wagner would receive 65% of the fee, to be shared with Baurkot pursuant to the existing agreement.

Ultimately, the action was brought in the Eastern District, with Wagner & Wagner as the attorneys of record and the Atkinson firm as lead counsel. This led to an agreement to settle the matter for $975,000.00, that, after the payment of fees, was to fund an annuity in the infant plaintiff's name.

b) Attorneys' Fee Proceedings

4

Pursuant to Local Civil Rule 83.2(a),[2] the magistrate judge held an infant compromise hearing to review the proposed settlement and award of fees. Although the attorneys were in agreement regarding the sharing of the fee award and the plaintiffs consented to the fee, the judge <u>sua</u> <u>sponte</u> questioned whether DR 2-107 permitted Wagner & Wagner to share its fee with Baurkot. She expressed concern that Baurkot had not performed any work in the matter and that his fee was simply a referral fee.[3] This concern arose at least in part, because (i) Wagner & Wagner failed to initially disclose Baurkot's share of the fee to the court and (ii) prior to the disclosure of Baurkot's share in a supplemental petition filed the day before the infant compromise hearing, the magistrate judge had never heard of Baurkot.

When the plaintiffs were questioned about their contact with Baurkot, Custodio stated that she could not recall his name. Rodriguez testified that he had spoken to Baurkot once over the phone and had a sense that Baurkot would receive a portion of the fee because he was the first attorney contacted, but that he "was

---

[2]Local Civil Rule 83.2(a)(1) provides:

> An action by or on behalf of an infant or incompetent shall not be settled or compromised, or voluntarily discontinued, dismissed or terminated, without leave of the court embodied in an order, judgment or decree. The proceeding upon an application to settle or compromise such an action shall conform, as nearly as may be, to the New York State statutes and rules, but the court, for cause shown, may dispense with any New York State requirement.

[3]The magistrate judge expressed no concern over the division of fees between Wagner & Wagner and the Atkinson firm.

not sure whether he was going to be working on the case or not." The attorneys from Wagner & Wagner stated only that Baurkot "has been involved and been in constant contact with [Wagner & Wagner] throughout the litigation." They also added conclusory statements relating to Baurkot's routine involvement in other cases that he had referred to Wagner & Wagner. Dissatisfied with this record, the magistrate judge requested submissions from Baurkot and Wagner & Wagner regarding the specific services Baurkot provided in the present litigation.

Both Wagner & Wagner and Baurkot submitted supplemental affidavits and memoranda of law. Wagner & Wagner also submitted its entire file in the case. Baurkot claimed that after he was first contacted by Rodriguez, they had several other telephone conversations that enabled Baurkot to conduct a preliminary investigation. Baurkot also claimed that once he concluded that Wagner & Wagner should become involved in the matter, he introduced Rodriguez to members of Wagner & Wagner over the telephone on August 3, 2005. According to Baurkot, he advised plaintiffs of the arrangement between himself and Wagner & Wagner during that phone call, and they agreed to it. Baurkot also asserted that he was involved in strategic decisions about the case, including the decision to file the claim in federal court instead of state court and the decision to bring in the Atkinson firm.

Edward Wagner, a member of Wagner & Wagner, submitted an affidavit stating that Wagner & Wagner informed plaintiffs of the

6

arrangement between Wagner & Wagner and Baurkot during a meeting with the plaintiffs on August 4, 2005, and that the parents agreed to the arrangement. He also asserted that Baurkot was involved in the decision to file suit in federal court and that Baurkot was involved throughout the case, even reminding him of specific facts on one occasion. However, Wagner acknowledged that he could not describe with greater particularity the amount or type of work performed by Baurkot.

Wagner & Wagner's file contained several hundred pages of documents, but only four that referred to Baurkot. These four dealt exclusively with the retaining of Wagner & Wagner and the Atkinson firm and with resultant fee agreements. None of the documents involved constituted legal services on behalf of the plaintiffs. Nor did any of the documents submitted show the parents consented to the fee-splitting arrangement.

On August 7, 2008, the magistrate judge issued her Report and Recommendation. After acknowledging that both Wagner & Wagner and plaintiffs agreed that their retainer agreement provided for a one-third contingency fee, she examined each individual fee request and determined that both Wagner & Wagner's request for fees of $133,286.60, representing two-thirds of 65% of the total one-third contingency fee, and the Atkinson firm's request for $107,654.56 in fees, representing 35% of the total one-third contingency fee, were reasonable.

The magistrate judge then denied any portion of the attorneys' fees to Baurkot because DR 2-107 prohibited it.

7

First, she found that DR 2-107 was violated because plaintiffs never received the required disclosure of the fee-sharing agreement. The judge rejected Wagner & Wagner's and Baurkot's contentions that they had orally sought and received the required consent. Instead, the magistrate judge relied on the plaintiffs' testimony indicating they were unaware that Baurkot would be working on the case.

Second, the magistrate judge concluded that DR 2-107 was violated because the requirement that either the work done be in proportion to the fee received or that the attorneys agree in a writing to undertake joint responsibility was not met. In so finding, she relied on several pieces of evidence, including: (i) Wagner & Wagner's initial failure to disclose Baurkot's share of the fee to plaintiffs; (ii) Wagner & Wagner's and Baurkot's failure to show specific work he performed on the case; and (iii) the lack of any documents in Wagner & Wagner's file to corroborate the claim that Baurkot performed services on the case.

The magistrate judge determined that the portion of the fee claimed by Baurkot should be awarded to the plaintiffs, rather than going to Wagner & Wagner. She expressed a concern that the fee would still find its way to Baurkot if Wagner & Wagner received it, and, moreover, noted that Wagner & Wagner had acknowledged that it considered $133,286.60 fair and adequate compensation for its efforts.

Wagner & Wagner and Baurkot filed timely objections to the

Report and Recommendation. They objected to those parts of the order that determined that Baurkot's portion of the fee should go to plaintiffs. These objections included an objection to the awarded fees because they resulted in a 55.3%/44.7% split between Wagner & Wagner and the Atkinson firm, rather than the agreed upon 65%/35% split. However, Wagner & Wagner and Baurkot specifically stated that "[t]he Wagner Firm, [sic] is not suggesting that the fee to the Atkinson Firm be reduced. . . . What we are stating is that since the fee to the Atkinson Firm is 35% of the full one-third contingency fee, the fee to the Wagner Firm should be 65% of the full one-third contingency fee." Judge Gleeson adopted the magistrate judge's Report and Recommendation in full. This appeal followed.

                              DISCUSSION

In the context of an infant compromise hearing, we review a district court's award or denial of attorneys' fees for an abuse of discretion. See Chen v. Chen Qualified Settlement Fund, 552 F.3d 218, 225 (2d Cir. 2009) (per curiam); see also Reiter v. MTA N.Y. City Transit Auth., 457 F.3d 224, 229 (2d Cir. 2006).

Appellants argue that the district court erred: (i) when it looked beyond the contingency agreement between Wagner & Wagner and the plaintiffs to the fee splitting agreements among the attorneys; (ii) when it found that DR 2-107 was violated; and (iii) when it granted Baurkot's portion of the fee to the plaintiffs instead of to Wagner & Wagner, thus altering the

9

65%/35% proportional division agreed upon by Wagner & Wagner and the Atkinson firm.  We disagree.

With regard to (i), in an infant compromise hearing, the district court is not confined to the overall award of attorneys' fees, and it is not excluded from considering the division of those fees among the various attorneys.  District courts have broad discretion when conducting an infant compromise hearing. See Local Civil Rule 83.2(a)(1); supra Note 2.  In particular, both the Local Civil Rules and New York State law grant broad authority to determine the reasonableness of attorney's fees. See Local Civil Rule 83.2(a)(2) ("The court shall authorize payment to counsel for the infant or incompetent of a reasonable attorney's fee and proper disbursements from the amount recovered in such an action, whether realized by settlement, execution or otherwise and shall determine the said fee and disbursements, after due inquiry as to all charges against the fund."); Goldstein v. St. Luke's-Roosevelt Hosp. Ctr. (In re Goldstein), 430 F.3d 106, 111 (2d Cir. 2005) (per curiam) ("[W]hen [the attorney] moved under Local Rule 83.2(b) for approval of the request for fees and costs, he thereby opened up the issue of the quality, or lack thereof, of his representation and the reasonableness of his fees."); N.Y. Judiciary Law § 474 ("An attorney may contract with the guardian of an infant to prosecute, by suit or otherwise, any claim for the benefit of an infant for a compensation to said attorney dependent upon the

10

success in the prosecution of such claim, subject to the power of the court . . . to fix the amount of such compensation."); <u>White v. DaimlerChrysler Corp.</u>, 871 N.Y.S.2d 170, 173-74 (App. Div. 2d Dep't 2008) (noting that under N.Y. Judiciary Law § 474, a contract between the attorney and the infant guardians providing for a contingency fee is to be considered by the judge, but it is not binding).

When multiple attorneys are involved in such an inquiry, fee splitting agreements offer no more than non-mandatory guidance because the court is under a duty to evaluate the quantity and quality of the representation by each attorney in order to ensure that the fees are appropriate. <u>See</u>, <u>e.g.</u>, <u>Ford v. Albany Med. Ctr.</u>, 724 N.Y.S.2d 795, 796-98 (App. Div. 3d Dep't 2001) (looking beyond the retainer agreement to the fee sharing agreement between the attorneys as well as the amount of work performed by each attorney).[4]

---

[4]Appellants argue that the district court erred when it relied on <u>Ford</u>, 724 N.Y.S.2d 795, because of statements made by this court in <u>Ballow Brasted</u>. <u>See Ballow Brasted</u>, 435 F.3d at 242 n.7 ("To the extent <u>Ford</u> and <u>Benjamin</u> can be read to conflict, we follow the decision of the Court of Appeals in <u>Benjamin</u>."). However, those statements were clearly dicta, at least when sought to be applied in the circumstances before us. <u>Ballow Brasted</u> arose as the result of a dispute amongst attorneys outside the context of an infant compromise hearing, <u>see</u> <u>id.</u> at 236-37, in circumstances in which <u>Ford</u> and <u>Benjamin</u> might be read to be in conflict with one another. <u>Compare</u> <u>Ford</u>, 724 N.Y.S.2d at 797-98 (looking into the amount of work performed by the attorneys where a violation of DR 2-107 was alleged) <u>with</u> <u>Benjamin</u>, 650 N.E.2d at 832-33 (refusing to look into the amount of work performed by the attorneys where a violation of DR 2-107 was alleged). In the context of a court determination of attorneys' fees during an infant compromise hearing, the cases do not conflict because only <u>Ford</u> is applicable. <u>Compare</u> <u>Ford</u>, 724 N.Y.S.2d at 796-97 (arising in the context of a dispute amongst the attorneys during an infant compromise hearing), <u>with</u> <u>Benjamin</u>, 650 N.E.2d at 830 (arising in the context of a dispute amongst the attorneys not during an infant compromise hearing).

11

We, therefore, see no reason why a court may not inquire as to the roles played and services provided by each firm. If a firm that plays an active role and provides substantial services seeks a fee that will be shared with a firm that has played no role and provided no services, the fee request may well be unreasonable.

Appellants rely on a number of cases to support their argument that consideration of the appropriateness of attorneys' fees does not extend to fee-splitting agreements among the attorneys. However, these cases are easily distinguished. Although each determined that it would be inappropriate to alter a fee splitting agreement between attorneys based on a violation of DR 2-107, they all arose in the context of a dispute between the attorneys rather than a dispute arising in the context of an infant compromise hearing. The different contexts involve differing interests and impose different obligations on the reviewing courts. See Ballow Brasted O'Brien & Rusin, P.C. v. Logan, 435 F.3d 235, 236-37 (2d Cir. 2006); Samuel v. Druckman & Sinel, LLP, 906 N.E.2d 1042, 1044-45 (N.Y. 2009); Benjamin v. Koeppel, 650 N.E.2d 829, 830-33 (N.Y. 1995). Indeed, only one of those cases, Samuel, involved an underlying matter with an infant plaintiff, and even there, the decision was in the context of a declaratory action involving a dispute between the attorneys after the infant compromise hearing. See Samuel, 906 N.E.2d at 1043-44; cf. Ford, 724 N.Y.S.2d at 796-98 (examining the amount

12

of work performed by the attorneys in a fee dispute involving an infant compromise hearing).

Therefore, the policies applied in those cases -- i.e., the desire to prohibit "efforts by clients or customers to use public policy as a sword for personal gain rather than a shield for public good," Benjamin, 650 N.E.2d at 831 (internal quotation marks omitted); the fact that "it ill becomes [attorneys seeking to avoid sharing fees], who are also bound by the Code of Professional Responsibility, to seek to avoid on 'ethical' grounds the obligations of an agreement to which they freely assented and from which they reaped the benefits," id. at 832-33; and the desire to avoid "inquir[ing] into the precise worth of the services performed by the parties" where the dispute is "among attorneys over the enforcement of fee-sharing agreements," id. at 832, -- simply do not apply here. In the present context, the guiding policy is protection of the infant interests. See White, 871 N.Y.S.2d at 173-74.

Therefore, the district court did not err in looking beyond the retainer agreement between Wagner & Wagner and the plaintiffs to the actual work performed by the various attorneys.

We turn now to whether the court erred in denying fees to Baurkot. DR 2-107 imposes three requirements before a fee may be shared among attorneys: (i) "[t]he client consents to employment of the other lawyer after a full disclosure that a division of fees will be made"; (ii) "[t]he division is in proportion to the

13

services performed by each lawyer, or, by a writing given the client, each lawyer assumes joint responsibility for the representation"; and (iii) "[t]he total fee of the lawyers does not exceed reasonable compensation for all legal services they rendered to the client." N.Y. Disciplinary R. 2-107(A). The district court found that a fee award to Baurkot violated both (i) and (ii). We agree.

With regard to (i), the district court was well within its role as fact finder when it rejected appellants' self-serving affidavits and statements, which were notably unsupported by any documentary evidence, in favor of the plaintiffs' testimony. Rodriguez's testimony, while indicating a speculative awareness that Baurkot would receive a fee in the case -- "Yeah, I have some idea that he was [getting part of the fee] because he was - we first contacted him" -- stated that he was unaware that Baurkot would actually be working on the case, in contrast to appellants' claims. Therefore, the district court did not err in determining that appellants did not obtain informed consent from the client for the fee-sharing agreement.

Nor did the district court err in finding that the second requirement of DR 2-107(A) was not met. The evidence demonstrated that Baurkot performed no services of value on the case, and thus the agreed fee division was not "in proportion to the services performed by each lawyer." N.Y. Disciplinary R. 2-107(A)(2); see also Ford, 724 N.Y.S.2d at 797-98. Nor did

14

appellants produce "a writing given to the client" in which "each lawyer assumes joint responsibility for the representation." N.Y. Disciplinary R. 2-107(A)(2). Therefore, the district court properly found that the second requirement of DR 2-107 was also not met.

Appellants also contend that, even if there was a violation of DR 2-107, it was a prospective violation of technical requirements and curable -- presumably by providing the client with a "joint responsibility" letter -- before fees have been paid. We disagree. While DR 2-107 does not impose an explicit time requirement, it clearly anticipates compliance with its requirements early on in the representation, as it requires that "[t]he client consents to the employment of the other lawyer . . . ." N.Y. Disciplinary R. 2-107(A)(1). Moreover, the undertaking of joint responsibility is difficult (to say the least) to accomplish, other than as a charade, after a settlement with the defendant has been reached. Therefore, the district court did not abuse its discretion by not allowing appellants to "cure" the violation after a settlement and scheduling of an infant compromise hearing.

Finally, appellants contend that, after determining that Baurkot was not entitled to attorneys' fees because of the violation of DR 2-107, the district court still erred when it distributed those fees to the plaintiffs rather than to Wagner & Wagner. They argue that this altered Wagner & Wagner's agreement

15

with the Atkinson firm because the proportion of the fees that went to Wagner & Wagner and to the Atkinson firm respectively did not conform to the agreed-upon 65%/35% split.

However, as noted, the district court had broad discretion to determine the value of the services rendered by each attorney, looking to fee-splitting agreements only for non-mandatory guidance. The district court did not abuse its broad discretion when it determined that Baurkot's fees should not go to Wagner & Wagner because that firm engaged in an ethical violation by failing to get the proper consent from the plaintiffs. See N.Y. Disciplinary R. 2-107(A) ("A lawyer shall not divide a fee for legal services . . ." unless the rule's requirements are met.). Moreover, there was evidence to support the district court's concern that Baurkot would obtain the money if it was awarded to Wagner & Wagner, given that appellants stressed throughout the proceeding the nature of their collaborative efforts in other cases Baurkot referred to Wagner & Wagner. Therefore, the district court did not abuse its discretion in awarding that portion of the fees to plaintiffs.

Appellants further suggest that, having determined that they were not entitled to Baurkot's portion of the fee, the district court nonetheless should not have altered its fee splitting agreement with the Atkinson firm. As a result, they seek to redistribute the awarded fees to match the agreed upon split, thus reducing the Atkinson firm's fees.

16

However, a party waives appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue. See Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003); Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002). In their objections to the Report and Recommendation, appellants stated that "[t]he Wagner Firm, [sic] is not suggesting that the fee to the Atkinson Firm be reduced." Such a statement not only failed to raise the claim now made but in effect told the district court not to consider the relief now sought. That statement was, therefore, a waiver. Moreover, even if the argument had not been waived, appellants would still not be entitled to a reduction in the fees awarded to the Atkinson firm because the fee-splitting agreement was not binding on the district court. See Local Civil Rule 83.2(a)(2); Ford, 724 N.Y.S.2d at 796-98.

We turn to a final matter. Given that Wagner & Wagner and Baurkot appeal from a judgment benefitting their clients while still claiming to represent those clients and given that said judgment found Wagner & Wagner and Baurkot committed ethical violations, the court made various inquiries at oral argument regarding the legal representation given the plaintiffs. The answers made it apparent that appellants had not obtained written consent from the plaintiffs for this appeal. Moreover, none of the plaintiffs' lawyers knew whether the annuity called for in the settlement agreement, the funding of which did not involve

17

monies at stake in the present dispute, had been established.  As a result, both Wagner & Wagner and the Atkinson firm were ordered to submit letters indicating the status of the annuity.  These letters indicated that, as of August 27, 2009, the defendants had made the required annuity premium payments, but the annuity had not yet been finalized and issued.  Wagner & Wagner blamed the Atkinson firm for the delay.  The Atkinson firm blamed Wagner & Wagner for the delay.

Concerned by the overall context of the proceeding and the failure to establish the annuity, we entered an order on August 28, 2009, indicating an intent to appoint pro bono counsel to represent the plaintiffs and ordering the law firms not to contact them.  On September 1, 2009, we entered an order affirming the judgment of the district court, directing that the mandate should issue forthwith, and indicating that an opinion would follow.  In that order, we appointed Robert J. Guiffra, Jr., Esq., to represent the plaintiffs on a pro bono basis and instructed Baurkot, Wagner & Wagner, and the Atkinson firm to communicate with plaintiffs only through the pro bono counsel.  Finally, the order remanded to the district court to:  (i) inquire into whether the district court's order of September 26, 2008, was complied with; (ii) ensure that plaintiffs receive the benefits to which they are entitled; and (iii) take any appropriate remedial and disciplinary actions.

CONCLUSION

We affirm the district court's order and order the continuation of representation by pro bono counsel. Any further appeal in this matter should be referred to this panel. The party taking the appeal shall notify the Clerk of this provision for reference.