Laura KROPELNICKI, Plaintiff–
Appellant–Cross–Appellee,

v.

Hal SIEGEL, Linda Strumpf,
Defendants–Appellees–
Cross–Appellants.

Docket Nos. 01–7025, 01–7233.

United States Court of Appeals,
Second Circuit.

Argued Nov. 8, 2001.

Decided May 8, 2002.

Joanne S. Faulkner, New Haven, CT, for Plaintiff–Appellant–Cross–Appellee.

Linda Strumpf, New Canaan, CT, for Defendants–Appellees–Cross–Appellants.

Before: KEARSE, MINER, and F.I. PARKER, Circuit Judges.

MINER, Circuit Judge.

Plaintiff-appellant-cross-appellee Laura Kropelnicki appeals from a judgment entered in the United States District Court for the District of Connecticut (Dorsey, *J.*) dismissing her action to recover under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, the Connecticut Creditor Collection Practices Act ("CCCPA"), Conn. Gen.Stat. § 36a–645, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a, and denying her motion to amend her complaint. Defendants-appellees-cross-appellants Linda Strumpf, Esq. and her husband Hal Siegel (together "defendants") cross-appeal the district court's denial of their motion for sanctions brought pursuant to Federal Rule of Civil Procedure 11.

This action is based on Kropelnicki's claims that defendants violated the aforementioned statutes by (1) proceeding to judgment against her in a state court debt collection action despite having represented to her attorney that they would not advance the litigation without first contacting him; (2) directly communicating with her with knowledge that she was represented by an attorney; and (3) sending a threatening letter following the entry of judgment in the state court action.

The district court dismissed the CCCPA and CUTPA claims, holding that Kropelnicki's failure to respond to defendants' motion to dismiss them constituted a waiver of those claims. The court also dismissed the FDCPA claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, holding that defendants' alleged misrepresentations to Kropelnicki's attorney did not constitute a violation of the FDCPA and that the defendants' post-judgment letter mailed to Kropelnicki's house did not constitute a violation of the FDCPA as to her because the letter was written to her daughter. In ruling on a motion to reconsider, the district court (1) adhered to its prior decision; (2) held that two of Kropelnicki's claims were barred by the FDCPA's one-year statute of limitations; and (3) denied Kropelnicki's motion to amend her complaint.

For the reasons that follow, we affirm the judgment of the district court in part and dismiss the appeal in part.

## BACKGROUND

Defendant-appellee Linda Strumpf is an attorney-at-law with offices in New Canaan, Connecticut. Her husband, defendant-appellee Hal Siegel, serves as her office manager. In November 1998, Strumpf brought a debt collection action in the Superior Court for the State of Connecticut, Judicial District of New Haven, on behalf of American Express Travel Related Services Company, Inc., against Kropelnicki and her daughter, Mila Evanauskas. The plaintiff in that action sought to recover monetary damages of $8,189.71 plus 18% interest accrued since May 13, 1998, attorney's fees in the amount of $1,637.94, costs of the suit, and "other relief as may be appropriate." The damages sought represented the unpaid balance due on an American Express credit card that was issued to Evanauskas. Although not named on the card, Kropelnicki was a "supplemental cardholder" who was authorized to use it. On November 22, 1998, the action was commenced when Kropelnicki and Evanauskas were served with a summons and complaint with a return date of December 29, 1998.[1]

On December 3, 1998, Siegel received a telephone call from Christopher M. Licari, an attorney who represented Kropelnicki and Evanauskas. While both parties agree that Siegel and Licari discussed settlement possibilities, they disagree as to the remainder of the discussion. Defendants allege that, in accordance with office policy, Siegel advised Licari to send a letter stating that he represented Kropelnicki and Evanauskas and informed Licari that Siegel would await such correspondence

before noting in the file that Kropelnicki and Evanauskas were represented by counsel. Defendants never received any correspondence from Licari.

In his sworn affidavit, Licari tells a different version of his conversation with Siegel. He claims that he told Siegel he had not yet filed an appearance in the case because he thought the case might be resolved without needing to appear, and that he asked Siegel not to file a motion for default without letting Licari know beforehand so that he would have the opportunity to speak with his clients. Licari further claims that he gave Siegel his telephone number, that he believed Siegel would not advance the litigation without notifying him, and that Siegel did not request written confirmation that Licari represented Kropelnicki and Evanauskas. No attorney filed a notice of appearance in the action and Kropelnicki did not file an answer or motion in response to the complaint.

Defendants also claim that prior to the state court judgment they mailed to Kropelnicki and Evanauskas on August 4, 1999, a copy of their motion for default for failure to appear, proposed judgment, and proposed order for weekly payments. Both Kropelnicki and Evanauskas deny that they ever received the moving papers. In any event, on August 11, 1999, a default judgment was entered against Kropelnicki and Evanauskas in the amount of $9,043.20. Defendants allege that they mailed Kropelnicki and Evanauskas a copy of the judgment on August 16, 1999. The latter claims that they did not receive this document either.

Kropelnicki claims instead that she first received notice of the advancement of the litigation in state court when she read a letter dated October 28, 1999, regarding a

---

1. In seeking to open the default judgment against her, Kropelnicki argued in state court that the summons and complaint delivered to her house did not include a return date.

judgment that had been entered against Evanauskas. The letter was addressed only to Evanauskas but was mailed to her at Kropelnicki's address.[2] The letter stated as follows:

Ms. Mila Evanauskas

37 Pearl Street

New Haven CT 06511

Re: American Express Travel Related Services Company, Inc. v. Mila Evanauskas Laura Kropelnicki

Dear Ms. Evanauskas:

This is to inform you that a judgment has been entered against you and in favor of American Express Travel Related Services Company, Inc. in the sum of $9043.20 plus interest from 08/11/99.

The judgment entitles us to liquidate your assets (i.e., your car, bank accounts, stocks, etc.) and garnishee [sic] your wages. Please contact us immediately to arrange payment/payment plan. This is an attempt to collect this debt and any information will be used for that purpose.

Very truly yours,

LINDA STRUMPF

ATTORNEY–AT–LAW

In a motion dated December 10, 1999, Kropelnicki and Evanauskas requested that the state court open the default judgment, claiming that there was "[r]easonable cause" because "other than the writ, summons and complaint, which did not contain a return date, [they] received no notice of any of the proceedings in this matter" until Strumpf's October 28 letter. In opposition papers dated January 4, 2000, defendants objected to the opening of the judgment. They argued that Kropelnicki and Evanauskas failed to respond to the initial papers, which admittedly were received, and that the summons and complaint did include a return date of December 29, 1998 as shown on the original filed with the court and the copy attached to defendants' opposition papers. Defendants also argued that the motion to open should be denied because Kropelnicki and Evanauskas failed to meet the requirements for opening a judgment under Connecticut law.[3]

By letter dated March 17, 2000, Joanne S. Faulkner, Kropelnicki's attorney in the present action, informed defendants that they had violated the FDCPA because "[Strumpf's] letter of Oct. 28, 1999, was written to [Kropelnicki] at a time when [defendants] knew that she was represented by [an] attorney." The letter stated that it was written to "give [Strumpf] the opportunity to settle the FDCPA violations by paying $1,500 so I have it in hand by April 7, 2000, with an additional $25 per week if not timely paid." Strumpf replied in a letter dated April 4, 2000, that Faulkner's allegations were without merit and that if Faulkner proceeded with such claims, Strumpf would seek "all remedies permitted by law."

On June 14, 2000, Kropelnicki filed suit in the United States District Court for the District of Connecticut against the defendants claiming violations of the FDCPA, CCCPA, and CUTPA, and seeking compensatory and punitive damages, costs, reasonable attorney's fees, and equitable remedies. Kropelnicki's complaint sets forth only the bare minimum required under the notice pleading standard applicable in federal courts. The complaint first sets out the statutory provisions Kropelnicki

---

**2.** The letter was sent to the same address that defendants had used to serve both Kropelnicki and Evanauskas with the summons and complaint.

**3.** The parties did not furnish us with information regarding the disposition of the motion to open or any further proceedings in the state case.

claims that the defendants violated. As to the factual bases for her claims, she alleges only the following: (1) "[d]efendants directly or indirectly communicated with [the] plaintiff or others on or after June 14, 1999, in connection with collection efforts with regard to [Kropelnicki's] alleged personal debt to American Express Travel Related Services Company, Inc."; (2) "[i]n the collection efforts, each defendant violated the FDCPA, *inter alia,* § 1692c, -d, -e, or -f"; (3) "[o]n or after June 14, 1997, each Defendant has engaged in acts and practices as to plaintiff in violation of the [CCCPA]"; and (4) "[e]ach Defendant has committed unfair or deceptive acts or practices within the meaning of the [CUTPA]."

On August 15, 2000, defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The defendants also moved for sanctions pursuant to Federal Rule of Civil Procedure 11(b). In an effort to show that a set of facts existed that would state a claim, Kropelnicki included in her opposition papers to defendants' motion to dismiss a more detailed factual basis in support of the alleged violations of the FDCPA. On October 11, 2000, the district court granted the motion to dismiss and ordered Kropelnicki to show cause why sanctions should not be imposed. In its ruling granting defendants' motion to dismiss, the court apparently construed Kropelnicki's complaint, in accordance with the details set forth in her opposition papers, to allege that the defendants violated the FDCPA by (1) suing her even though she was merely a supplemental credit card holder and was thus not liable for the debt; (2) contacting her after being informed that she was represented by an attorney; (3) sending her a threatening letter that misrepresented actions that could be taken against Evanauskas to satisfy the judgment entered against her; and (4) proceeding to judgment despite their statement that they would not do so before contacting the attorney.

The court then addressed each of these four claims. The court rejected Kropelnicki's argument that the defendants violated the FDCPA by suing her to collect a debt for which she was not liable.[4] The court first noted that Kropelnicki's "broad claim that the defendants violated the FDCPA in 'the collection efforts' ... is too vague and conclusory to state a claim." The district court further stated that, in any event, pursuing a debt collection action does not violate the FDCPA because it does not involve the making of "any false, deceptive, or misleading representation or means in connection with the collection of any debt" as prohibited by the FDCPA. This is so, the court explained, because "[a]n allegation that a debt collector cannot prove what [the debt collector] claimed is not equivalent to an allegation that [the debt collector] made a false, deceptive, or misleading representation." Thus, the court dismissed any claims Kropelnicki asserted in relation to the filing of the state court action.

The court then addressed Kropelnicki's two claims relating to the October 28 letter. Kropelnicki claimed that the letter violated the FDCPA because (1) it was "intentionally frightening, made false threats and misrepresentations," and (2) "it constituted improper contact with a represented party." Although the letter

---

**4.** On appeal Kropelnicki claims that she "has never alleged or claimed that defendant's filing of the state court lawsuit against her is itself an FDCPA violation" and "respectfully request[s]" us to "ignore any arguments based on Mrs. Kropelnicki's supposed, but non-existent, claim that the state court lawsuit itself violated the FDCPA."

was addressed only to Evanauskas, Kropelnicki argued that a "person who reads a collection letter directed to another can make a claim under the FDCPA." The court disagreed, concluding that Kropelnicki's complaint "alleges no facts indicating that she stood in her daughter's shoes or had the authority to open and read her mail," and that "[a]ccordingly, she lacks standing to claim that the letter was a violation of the FDCPA." Thus, the court held that the letter could not constitute an improper communication with Kropelnicki because "the letter was not addressed to [Kropelnicki], [and] cannot be viewed as communication with her."

Finally, the district court addressed Kropelnicki's claim that the defendants' misrepresentation to Licari that they would not file a motion for default in the state court action or otherwise advance the litigation without first communicating with him violated the FDCPA.[5] The court rejected this argument, holding that there was no FDCPA violation because "the alleged misrepresentation was [not] *used* to attempt to collect a debt," which is prohibited by the FDCPA, but rather was only "made *in connection with* the attempt to collect a debt through legal action," which the court concluded was not prohibited by the FDCPA. The court also dismissed Kropelnicki's state law claims because she "fail[ed] to respond to defendants' claim that the state law claims should be dismissed."[6] Judgment was entered on October 11, 2000.

On October 19, 2000, Kropelnicki filed a timely motion for reconsideration and for permission to amend her complaint, claiming that the district court's decision departed from established law, that the court misapprehended the facts she intended to prove, and that reconsideration was required to prevent manifest injustice. She also attached to the motion a proposed amended complaint that incorporated the expanded factual allegations set forth in her opposition papers. On that same date, Kropelnicki filed a memorandum of law to comply with the district court's order to show cause with regard to sanctions.

On November 29, 2000, the court granted the motion for reconsideration and adhered to its prior ruling. In addition, the court found that "[r]egardless" of the merits of Kropelnicki's claim arising out of the filing of the state lawsuit, that claim was barred by the FDCPA's one-year statute of limitations, which the court held began to run on the date the state court complaint was filed. The court also elaborated on its prior ruling that the defendants' decision to proceed to judgment in the state court action without first contacting Kropelnicki's attorney did not come within the purview of the FDCPA provision prohibiting the use of "false representation or deceptive means to collect" a debt. 15 U.S.C. § 1692e(10). The court explained that "[a]s a matter of law, an attorney's gratuitous yet false representation that he or she will contact opposing counsel prior to moving for default judgment cannot constitute a violation of the FDCPA—the representation does not and cannot negate an attorney's obligation to prosecute or defend a case." In relation to the representation made to plaintiff's attorney, the court found that "[r]egardless, this claim is untimely as plaintiff states the representation was made on December 3, 1998, over a year prior to her filing this lawsuit." Fi-

---

5. The FDCPA prohibits the "use [by a debt collector] of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

6. Kropelnicki does not challenge on appeal the district court's dismissal of her state law claims.

nally, the district court denied Kropelnicki's motion to amend. That same day, the district court denied in a separate ruling defendants' request for sanctions, holding that "it cannot be said that [Kropelnicki's claim regarding the October 28 letter] was not only unsupported by legal authority but was absolutely beyond acceptance as a novel legal theory."

This timely appeal by Kropelnicki and timely cross-appeal by defendants followed.

## DISCUSSION

I. *Defendants' Alleged Misrepresentation to Licari*

### A. *The FDCPA*

 The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir.2001). The legislative history of the passage of the FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating

legal process." S.Rep. No. 95–382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696. The FDCPA sets forth examples of particular practices that debt collectors are forbidden to employ. *See* 15 U.S.C. § 1692e. The list, however, is nonexhaustive, and the FDCPA generally forbids collectors from engaging in unfair, deceptive, or harassing behavior. *See* 15 U.S.C. §§ 1692 *et seq.* Kropelnicki argues that the defendants violated the FDCPA by advancing the state court action after having told Licari that they would not do so without first contacting him. Although not dispositive to our holding here, since we dismiss the appeal in regard to this issue, we would have grave reservations about concluding that this sort of claim is actionable under the FDCPA. A review of the FDCPA's purpose, as explained both in the statute and in the legislative history, and this Court's treatment of the FDCPA in other cases leads us to believe that alleged misrepresentations to *attorneys* for putative debtors cannot constitute violations of the FDCPA.

 The FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors. To effectuate this purpose, we review claims of FDCPA violations under the so-called least-sophisticated-consumer standard in order to: "(1) ensure[ ] the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protect[ ] debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir.1993). Accordingly, we find serious flaws in Kropelnicki's argument that a violation of the FDCPA occurs where a party alleges that his attorney has been misled to the party's detriment. *See Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir.1998) (explaining that we may decline

to interpret the FDCPA in a manner that "would thwart the obvious purpose of the statute") (citation omitted). Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior. However, this is not an issue on which we need to rule today.

### B. *Application of the* Rooker–Feldman *Doctrine*

 A threshold matter not raised by either party or the district court concerns our subject matter jurisdiction over a portion of this appeal, which we are obliged to raise *sua sponte. Henrietta D. v. Giuliani,* 246 F.3d 176, 179 (2d Cir. 2001). Under the *Rooker–Feldman* doctrine, lower federal courts lack subject matter jurisdiction over claims that effectively challenge state court judgments. *See D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 486–87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court is the only federal court that has jurisdiction to review state court judgments, *ASARCO Inc. v. Kadish,* 490 U.S. 605, 622, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989), unless otherwise provided by Congress, *see, e.g.,* 28 U.S.C. § 2254 (habeas corpus review). This comity principle seeks to prevent "state and federal courts . . . [from] fight[ing] each other for control of a particular case." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970).

 In addition to claims that were actually litigated in state court, the *Rooker–Feldman* doctrine bars lower federal courts from exercising jurisdiction over claims that are "inextricably intertwined" with state court determinations. *Feldman,* 460 U.S. at 482–83 n. 16, 103 S.Ct. 1303. A claim is inextricably intertwined under *Rooker–Feldman* when "at a minimum, . . . a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), . . . [and] the claim . . . would be barred under the principles of preclusion." *Moccio v. N.Y. State Office of Court Admin.,* 95 F.3d 195, 199–200 (2d Cir.1996). However, "where the claims were never presented in the state court proceedings and the plaintiff did not have an opportunity to present the claims in those proceedings, the claims are not 'inextricably intertwined' and therefore not barred by *Rooker–Feldman." Id.* at 199.

 Kropelnicki's claim regarding the misrepresentation made by defendants to Licari is inextricably intertwined with the state court judgment in the underlying debt collection action because she had an opportunity to raise this claim on her motion to open the judgment in state court. This is so even accepting as true her claim that she was kept out of the state court action in the first instance by the defendants' misrepresentation to Licari that they would not advance the litigation without first contacting him. A litigant may not "rely on the deception of her opponents to demonstrate that she was not afforded a reasonable opportunity" to raise her claims. *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 559 (7th Cir.1999). Kropelnicki's claim regarding this misrepresentation sounds in fraud, yet we have "never recognized a blanket fraud exception to *Rooker–Feldman." Johnson v. Smithsonian Inst.,* 189 F.3d 180, 186–87 (2d Cir.1999). Instead, in order to demonstrate a lack of opportunity to present her claims in state court, Kropelnicki must show "some factor independent of the ac-

tions of the opposing party that precluded [her] from raising [her] federal claims." *Long*, 182 F.3d at 558. Kropelnicki has not identified any such factor.

Connecticut law provides four months from the date a judgment was "rendered or passed" in which to petition the court to open a default judgment. Conn. Gen.Stat. § 52–212. The judgment may be opened if a party

> show[s] reasonable cause, or [shows] that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense.

*Id.* In addition, Connecticut law allows for any judgment obtained through fraudulent means to be opened at any time. *Kenworthy v. Kenworthy*, 180 Conn. 129, 429 A.2d 837, 838 (1980) (per curiam). Accordingly, Connecticut law afforded Kropelnicki ample opportunity to raise her misrepresentation claim.

In fact, Kropelnicki was well aware of this opportunity because on December 10, 1999, she filed a motion to open the state court judgment, claiming that "[r]easonable cause to open the judgment exists" since she allegedly did not have "notice of any of the proceedings" until receipt of the October 28 letter. Although Kropelnicki's motion makes no mention of the defendants' alleged misrepresentation to Licari, Connecticut law nonetheless afforded Kropelnicki a full and fair opportunity to raise this claim in state court. Whether or not the claim was raised is unknown to us because, as previously noted, we were not favored with any information relating to the ongoing proceedings in the state court. ▉ Moreover, if adjudication of a claim in federal court would require the

court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment. *See Jordahl v. Democratic Party*, 122 F.3d 192, 202 (4th Cir.1997). Were we to accept Kropelnicki's argument that the defendants misrepresented to Licari that they would take no further steps in the state court action without first contacting him, our ruling would effectively declare the state court judgment fraudulently procured and thus void. This is precisely the result that the *Rooker–Feldman* doctrine seeks to avoid: "The *Rooker–Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.1998); *see also Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir.1995) ("*Rooker–Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.").

Accordingly, we find Kropelnicki's claimed violation of the FDCPA on the basis of the defendant's alleged misrepresentation to Licari to be inextricably intertwined with the state court default judgment and the motion to vacate it. Since Kropelnicki had ample opportunity to raise this claim before the state court, we conclude that the *Rooker–Feldman* doctrine bars us from reviewing this claim.

## II. *The October 28 Letter*

▉ Kropelnicki also asserts two claims that the October 28 letter violated the FDCPA: (1) that it constituted an improper contact with her, since defendants knew she was represented by an attorney; and (2) that it contained false,

deceptive, or misleading representations made in connection with the collection of the debt. Those claims are not barred by the *Rooker–Feldman* doctrine because they are not "inextricably intertwined" with the state court determination, since Kropelnicki did not have the opportunity to litigate them in the debt collection action. The letter was mailed more than two months after the state court judgment was entered, and our exercise of jurisdiction over Kropelnicki's claims in regard to the letter could not affect the judgment.

▮ The district court dismissed Kropelnicki's claims based on the letter for failure to state a claim upon which relief can be granted, holding that: (1) because the letter was addressed solely to Evanauskas, it could not constitute a communication with Kropelnicki at all; and (2) Kropelnicki did not have standing to claim that the letter violated the FDCPA because Kropelnicki did not "stand in the shoes" of Evanauskas.[7] We review *de novo* a district court's dismissal of a complaint, "taking all factual allegations in the complaint as true and construing all reasonable inferences in favor of the plaintiff." *Conboy v. AT & T Corp.*, 241 F.3d 242, 246 (2d Cir.2001).

▮ Kropelnicki first argues that the court improperly dismissed her claim that the letter constituted an improper communication made to a represented party because "there were possible scenarios under which Mrs. Kropelnicki could have properly read the letter, which itself shows there is a set of facts which plaintiff could prove to sustain her allegations." We disagree. In order to make out this claim, Kropelnicki must first show that the letter was a communication *to her*. This she cannot do because the letter was only addressed to Evanauskas, and was therefore not a communication with Kropelnicki at all.

▮ For the same reason, Kropelnicki has *no standing* to claim that the contents of the letter violated the FDCPA. Even if the letter contained language that was threatening or misleading, it was not threatening or misleading as to Kropelnicki because it was not addressed to her. Put another way, prohibited language in the letter sent to Evanauskas cannot create a cause of action for Kropelnicki merely because she read the letter containing the threat. Accordingly, we conclude that there is no set of facts under which Kropelnicki could state a claim based on the October 28 letter.

▮ Kropelnicki also argues that we should reverse the district court's denial of her request to amend her complaint. We review the denial of leave to amend a complaint for abuse of discretion. *Koehler v. Bank of Bermuda (New York) Ltd.*, 209 F.3d 130, 138 (2d Cir.2000). While generally leave to amend should be freely granted, *see* Federal Rule of Civil Procedure 15(a), it may be denied when there is a good reason to do so, such as futility, bad faith, or undue delay. *Chill v. General Elec. Co.*, 101 F.3d 263, 271–72 (2d Cir. 1996). In denying Kropelnicki's motion for leave to amend, the court stated that, "[p]laintiff makes no new argument, nor does she attempt to allege facts in her proposed amended complaint, controverting the Court's prior determination" that she lacked standing to sue on the October 28 letter to her daughter. Kropelnicki's

---

7. The district court also injected here the issue of the statute of limitations. The statute of limitations is an affirmative defense that is waived if not raised. *See* Fed.R.Civ.P. 8(c); *Santos v. District Council*, 619 F.2d 963, 967 n. 5 (2d Cir.1980). As a result, we have held that "a district court 'ordinarily' should not raise a statute of limitations defense *sua sponte.*" *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir.1995).

proposed amended complaint merely added to her original complaint the facts asserted in her opposition papers to defendants' motion to dismiss. Because the district court's initial ruling took these facts into consideration, holding that they did not state a claim, her proposed amended complaint offered no new facts or allegations for the court to consider. Moreover, because the court determined, as have we, that there is no possible set of facts relating to the October 28 letter that Kropelnicki could plead that would state a claim, the district court did not abuse its discretion in denying Kropelnicki's request for leave to amend her complaint.

### III. *Rule 11 Sanctions*

■■■ Defendants cross-appeal the district court's denial of their motion for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"). We review a district court's ruling on a motion for Rule 11 sanctions for abuse of discretion. *Gurary v. Winehouse*, 235 F.3d 792, 798 (2d Cir.2000). "A pleading, motion or other paper violates Rule 11 either when it 'has been interposed for any improper purpose, or *where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.' " *W.K. Webster & Co. v. Am. President Lines, Ltd.*, 32 F.3d 665, 670 (2d Cir.1994) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985)); *see also Gurary*, 235 F.3d at 798 ("Rule 11 is violated when it is clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.") (internal quotation marks omitted).

■■ The district court denied defendants' request for sanctions because "[t]hough the doubtful merit of [Kropelnicki's claims premised on the October 28 letter] should have been considered by counsel, it [could not] be said that the claim[s] [were] not only unsupported by legal authority but [were] absolutely beyond acceptance as a novel legal theory, i.e., that a letter addressed to another could give rise to a claim which targeted other than the letter addressee."

The defendants assert that sanctions should be imposed because, *inter alia,* "[Kropelnicki] went beyond the law and the intent of the law to attempt to create any violation that she could concoct, in order to obtain a quick fee." We cannot say that Kropelnicki's claims were interposed for an improper purpose. Nor do we have any indication that they were based on anything but a good faith belief in their merits. We agree with the district court that it is not completely inconceivable that a novel legal theory could have been developed whereby Kropelnicki could have successfully asserted claims based on the October 28 letter. Accordingly, we hold that the district court did not abuse its discretion in denying the motion for sanctions.

### CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court to the extent that it dismisses the claims relating to the October 28 letter, denies leave to amend the complaint, and denies the defendants' application for sanctions. In all other respects, the appeal is dismissed.