**Christopher SCHUH and Diane Schuh, Plaintiffs,**

v.

**DRUCKMAN & SINEL, L.L.P., et al., Defendants.**

**No. 07 Civ. 366 (LAK).**

United States District Court, S.D. New York.

July 14, 2010.

---

John C. Klotz, Attorney at Law, New York, NY, for Plaintiffs.

Blaise U–Shing Chow, Geoffrey William Heineman, Ropers, Majeski, Kohn & Bentley, P.C., Los Angeles, CA, Eric Corey Weissman, Ropers, Majeski, Kohn & Bentley, P.C., New York, NY, for Defendant Druckman & Sinel, L.L.P.

## ORDER

LEWIS A. KAPLAN, District Judge.

Plaintiffs' objections to the report and recommendation of Magistrate Judge Gabriel W. Gorenstein, dated June 29, 2010, are entirely without merit. The motion of defendant Druckman & Sinel, LLP, for summary judgment dismissing the complaint [DI 115] is granted.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

Christopher and Diane Schuh brought this suit raising a number of claims relating to the efforts by various banks to foreclose on the Schuhs' property following the Schuhs' failure to pay their mortgage. A prior decision of this Court dismissed all of the Schuhs' claims except for a single claim arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.,* against Druckman and Sinel, LLP ("D & S"), the law firm that filed the foreclosure action. D & S has moved for summary judgment. For the reasons that follow, D & S's motion for summary judgment should be granted.

### I. *BACKGROUND*

#### A. *Facts*

Unless otherwise stated, the following facts are not in dispute.

On September 16, 1994, the Schuhs obtained a $66,000 loan from Personal Mortgage Corporation secured by a mortgage on their residence. *See* Mortgage, dated Sept. 16, 1994 (R. 65–72).[1] The Schuhs were in default on their mortgage beginning in 1997. *See* Second Amended Complaint, filed Apr. 14, 2008 (Docket # 72) ("Compl.") ¶ 84. In their complaint in this Court, the Schuhs allege that various entities became either the purported assignees of the mortgage or were responsible for servicing the mortgage. *Id.* ¶¶ 103–107, 110–12.

On May 4, 2004, D & S filed an action in New York State Supreme Court in Saratoga County on behalf of Mortgage Electronic Registration Systems, Inc. ("MERS") to foreclose on the Schuhs' mortgage. *See* Verified Complaint, filed May 4, 2004 (R. 33–28). The court granted MERS' motion for summary judgment, *see* Order for Summary Judgment and Reference, filed Oct. 5, 2004 (R. 20–23), and thereafter granted a Judgment of Foreclosure and Sale, *see* Judgment of Foreclosure and Sale, filed Jan. 21, 2005 (R. 12–19). While the foreclosure sale was scheduled for March 1, 2005, *see* Order to Show Cause on Motion to Vacate Default Judgment, filed Nov. 21, 2005 (R. 104–07), the Schuhs served an Order to Show Cause through retained counsel, Frank A. Romano, seeking to stay the foreclosure sale and to vacate both the order granting summary judgment and the judgment of foreclosure, *id.;* Letter from Frank A. Romano to Hon. Stephen A. Ferradino, dated Feb. 23, 2005 (annexed as Ex. 8 to Heineman Aff.). On October 27, 2005, the court denied the Schuhs' motion to vacate. *See* Decision and Order, filed Nov. 21, 2005 (R.

---

1. "R." refers to page numbers of the Record on Appeal filed in the Appellate Division, Third Department, when the foreclosure action was on appeal. The record is reproduced as Ex. 6 to the Affirmation of Geoffrey W. Heineman in Support of Motion for Summary Judgment of Defendant Druckman & Sinel, LLP, filed Dec. 4, 2009 (Docket # 116) ("Heineman Aff.").

9–11). The Schuhs then appealed that decision to the Appellate Division, Third Department, *see* Notice of Appeal, filed Dec. 21, 2005 (R. 2), and on December 13, 2005, filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the Northern District of New York, *see* Final Report and Account, undated (R. 217–18). The Schuhs moved again to vacate the order granting summary judgment and the judgment of foreclosure, alleging newly discovered evidence. *See* Notice of Motion on Renewal and/or for Reconsideration and for Summary Judgment Against Plaintiff, dated Feb. 16, 2006 (R. 173–74); Defendant's Affidavit in Support of Motion on Renewal Presenting New Evidence and for Reconsideration, dated Feb. 16, 2006 (R. 175–88). The court denied that motion on the ground that the evidence was not new. Decision and Order, filed Mar. 27, 2006 (R. 163–65).

The foreclosure sale was held on March 23, 2006, and Christopher Schuh (hereinafter referred to as "Schuh") was the successful bidder, offering $141,251. *See* Terms of Sale, dated Mar. 23, 2006 (R. 260–64); Compl. ¶ 136. As was required, Schuh made a partial payment of $14,126 at that time to the court-appointed referee, Stephen Rodriguez. *See id.* On March 27, 2006, D & S wrote to Schuh to inform him that the closing had to take place no later than 30 days from the date of sale, April 24, 2006; that no adjournments would be permitted; and that failure to close within that time period would result in "the forfeit of the down payment." Letter from Silvia Cartagena to Christopher Schuh, dated Mar. 27, 2006 (annexed as Ex. 15 to Heineman Aff.). On April 13, 2006, the Schuhs filed a motion in New York State Supreme Court in Saratoga County to stay the closing and to reconsider their motion to vacate the order granting summary judgment and the judgment of foreclosure. *See* Defendant Druckman & Sinel, LLP's ("The Druckman Firm")

Statement Pursuant to Rule 56.1, filed Dec. 7, 2009 (Docket # 119) ("D & S Rule 56.1 Statement") ¶ 31 (undisputed by plaintiffs); Notice of Motion to Renew and Vacate Order of Summary Judgment upon New Found Evidence, filed Apr. 13, 2006 (R. 209); Order to Show Cause on Notice of Motion to Renew and Vacate Order of Summary Judgment upon New Found Evidence, dated Apr. 13, 2006 (R. 210–12). The court denied the Schuhs' motion in its entirety. *See* Decision and Order, filed Aug. 25, 2006 (R. 24–25).

Another foreclosure sale was scheduled for November 13, 2006, and the Schuhs unsuccessfully tried to enjoin that sale by seeking a stay in the Appellate Division, Third Department. *See* Decision and Order on Motion, dated Nov. 9, 2006 (R. 346). The Schuhs were able to delay the scheduled foreclosure sale by filing a second voluntary Chapter 13 petition in the Northern District of New York. *See* Chapter 13 Bankruptcy Petition, dated Nov. 10, 2006 (annexed as Ex. 3 to Heineman Aff.).

In the meantime, and at some point after the March 2006 foreclosure sale, the Schuhs took steps to secure funds from Countrywide Mortgage. *See* Deposition of Christopher Schuh, dated Oct. 27, 2009 (annexed as Ex. 2 to Supplemental Affirmation of Geoffrey W. Heineman in Support of Motion for Summary Judgment of Defendant Druckman & Sinel, LLP, filed Dec. 8, 2009 (Docket # 121) ("Heineman Supp. Aff.")) ("Schuh Dep."), at 92–94. Countrywide Mortgage used Linear Title, a title company, to assist in preparation of the financing. *See* Email from Rusty Solomon to Silvia Cartagena, dated Sept. 28, 2006 (annexed as Ex. 17 to Heineman Aff.) ("September Linear Title Email"). On September 29, 2006, Countrywide issued a loan commitment letter to Diane Schuh for $91,813.15, *see* Schuh Commitment Letter,

dated Sept. 29, 2006 (annexed as Ex. D to Supplemental Affirmation of Geoffrey W. Heineman in Support of Motion for Summary Judgment of Defendant Druckman & Sinel, LLP, filed Apr. 9, 2010 (Docket # 132) ("Heineman Second Supp. Aff.")), though no closing occurred on that date.

Eventually, on November 24, 2006, Countrywide issued a "Notice of Loan Approval and Loan Commitment" in the amount of $130,000 to Diane Schuh. Notice of Loan Approval and Commitment, dated Nov. 24, 2006 (annexed as Ex. I to Opposing Declaration of John C. Klotz, filed Jan. 8, 2010 (Docket # 122) ("Klotz Decl.")); Opposing Declaration of Christopher Schuh, filed Jan. 8, 2010 (Docket # 123) ("Schuh Decl.") ¶ 44. On the same date, Theresa Giannavola of Linear Title sent a fax to D & S requesting "a new payoff statement" from D & S. *See* Fax from Theresa M. Giannavola to Druckman & Sinel, dated Nov. 24, 2006 (annexed as Ex. 18 to Heineman Aff.) ("Linear Title Fax"). The fax states in its entirety: "Please send a new payoff statement immediately for the above borrower!" It is signed by "Theresa M. Giannavola, Esq." The letterhead on the fax reads "Linear Title & Closing," gives an address in Rhode Island, and contains the fax number "(866) 634–5116." *Id.* Five calendar days (and three business days) later, D & S sent, via facsimile, the letter that is alleged to have violated the FDCPA. The letter, dated November 29, 2006, is addressed to "Theresa Giannavola, Esq." *See* Letter from Dana Athanasio to Theresa Giannavola, Esq., dated Nov. 29, 2006 (annexed as Ex. 20 to Heineman Aff.) ("Nov. 29 Letter"). Underneath Giannavola's name in the place where an address would normally occur is written "c/o Christopher Schuh." Schuh's name is not followed by any address. Above Giannavola's name appears the same fax number that was contained in Giannavola's November 24 fax to D & S.

The Nov. 29 Letter stated that "payoff figures good through December 15, 2006" required one check to HSBC Mortgage Services for $111,938.55 and a second check to D & S for $13,250 for legal fees. *Id.* The letter also included a statement that "[t]he figures quoted in this statement are not to be considered an estoppel and must be verified prior to acceptance of any payment." *Id.* The letter attached two copies of the payoff amounts through December 15, 2006 on HSBC letterhead. *Id.* at 2–3.

In Schuh's deposition testimony, Schuh stated that he could not remember either Linear Title or Theresa Giannavola, that he had not had conversations with either Giannavola or Linear Title, and that he did not remember seeing the Nov. 29 Letter at the time it was sent. *See* Schuh Dep. at 129–31. In an errata sheet for his deposition transcript, however, Schuh stated that he did see the Nov. 29 Letter, though he did not state when he saw it. *See* Christopher Schuh Errata Sheet, dated Dec. 21, 2009 (annexed as Ex. N to Klotz Decl.) ("Errata Sheet"), at 2.

In December 2006, the Schuhs stayed the sale by making a payment to the court towards the payoff figure. *See* Amended Decision and Order, dated Jan. 19, 2007 (R. 26–29). On December 11, 2006, the bankruptcy court issued an order lifting the bankruptcy stay. Order Denying Extension of the Automatic Stay, dated Dec. 11, 2006 (R. 347–48). The Schuhs then made a motion in the Third Department to stay the public auction of the property, which had been scheduled for January 22, 2007. *See* Notice of Motion to Stay Foreclosure Sale and Vacate Foreclosure Judgment, dated Dec. 29, 2006 and Affirmation on Support of Motion to Stay Foreclosure Sale and Vacate Judgment of Foreclosure, dated Dec. 29, 2006 ("Schuh Dec. 29 Aff.") (annexed as Ex. 22 to Heineman Aff.); Notice of Motion to Dismiss Appeal as

Moot and Vacate Foreclosure or Extend Time to Perfect Appeal, dated Dec. 21, 2006 (R. 317–18); Supporting Affirmation, dated Dec. 21, 2006 (R. 319–29). In their affirmation in support of their motion, the Schuhs annexed the Nov. 29 Letter and argued that there was "no record justifying or explaining either HSBC's claim for any unpaid fees or the attorneys' claims for a $13,250 fee." Schuh Dec. 29 Aff. ¶¶ 22, 28. In an Amended Decision and Order, dated January 19, 2007, the Supreme Court granted, in part, the Schuhs' motion to enjoin the January 22, 2007 foreclosure sale because the Schuhs had elected to exercise their statutory right of redemption under Real Prop. Acts. Law § 1341. *See* Amended Decision and Order, dated Jan. 19, 2007 (R. 26–29). Ultimately, the Schuhs retained their home with the help of their family. *See* Schuh Dep. at 145.

### B. *Procedural History*

The Schuhs brought suit in this Court on January 17, 2007 asserting a number of causes of action. Their first complaint was dismissed with leave to replead certain claims. *Schuh v. Druckman & Sinel, L.L.P.*, 2008 WL 542504 (S.D.N.Y. Feb. 29, 2008), *adopted by* Order, filed Mar. 19, 2008 (Docket # 62). Their second com-

plaint was dismissed as to all claims and all defendants with the exception of a claim under the FDCPA against D & S regarding the Nov. 29 Letter. *See Schuh v. Druckman & Sinel, LLP*, 602 F.Supp.2d 454, 463–65 & n. 6 (S.D.N.Y.2009).

The Schuhs assert that the Nov. 29 Letter violated the FDCPA in several ways: through D & S's utilization of "unfair and unconscionable means to collect the debt owed by the Plaintiff, including the collecting and attempting [sic] to collect of interest and other charges, fees and expenses not authorized by the original Mortgage Note or Mortgage, or otherwise legally chargeable to the Schuhs, subsequent to the judgment of foreclosure"; "by misrepresenting the character, amount and legal status of the Plaintiffs' debt"; and "by failing to accurately and fully state in communications to the Plaintiff 'the amount of the debt.'" Compl. ¶ 193.

On December 4, 2009, D & S made the instant motion for summary judgment.[2] The Schuhs filed opposition papers[3] and D & S filed reply papers.[4] On March 19, 2010, the Court gave leave to the parties to submit additional briefing. *See* Order, filed Mar. 19, 2010 (Docket # 129) (citing D & S Mem. at 17, 25–27). In accordance with that Order, each side submitted supplemental papers.[5]

**2.** Notice of Motion for Summary Judgment, filed Dec. 4, 2009 (Docket # 115); D & S 56.1 Statement; Memorandum of Law in Support of Defendant Druckman & Sinel, LLP's ("The Druckman Firm") Motion for Summary Judgment, filed Dec. 4, 2009 (Docket # 117) ("D & S Mem."); Heineman Aff.; Heineman Supp. Aff.

**3.** Klotz Decl.; Schuh Decl.; Plaintiff's Rule 56.1 Counter Statement, filed Jan. 11, 2010 (Docket # 126); Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, filed Jan. 8, 2010 (Docket # 125) ("Schuh Opp. Mem.").

**4.** Reply Memorandum of Law in Support of Defendant Druckman & Sinel, LLP's ("The

Druckman Firm") Motion for Summary Judgment, filed Jan. 22, 2010 (Docket # 128); Reply Affirmation of Geoffrey W. Heineman in Support of Motion for Summary Judgment of Defendant Druckman & Sinel, LLP, filed Jan. 22, 2010 (Docket # 127) ("Heineman Reply Aff.").

**5.** *See* Defendant Druckman & Sinel, LLP's ("The Druckman Firm") Supplemental Statement and Memorandum of Law in Support of Summary Judgment, filed Apr. 9, 2010 (Docket # 131); Heineman Second Supp. Aff.; Supplemental Opposing Declaration of John C. Klotz, filed Apr. 23, 2010 (Docket # 133); Plaintiffs' Memorandum in Response to Defendant Druckman Firm's Supplemental Statement and Memorandum of Law in Sup-

## II. APPLICABLE LAW

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A genuine issue of material fact "may reasonably be resolved in favor of either party" and thus should be left to the finder of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, the non-moving party "must come forward with 'specific facts showing that there is a *genuine issue for trial,*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e) (emphasis in original)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Jeffreys v. City of N.Y.,* 426 F.3d 549, 554 (2d Cir.2005) (citation omitted). In other words, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case." *Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993) (citation, internal quotation marks, and brackets omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir.1996) (citation omitted); *accord Feurtado v. City of N.Y.,* 337 F.Supp.2d 593, 599–600 (S.D.N.Y.2004).

### B. Law Governing FDCPA Claims

The FDCPA "grants a private right of action to a consumer who receives a communication that violates the Act." *Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 91 (2d Cir.2008) (citing 15 U.S.C. § 1692k). The Second Circuit has summarized the purpose and history of the FDCPA as follows:

> The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *DeSantis v. Computer Credit, Inc.,* 269 F.3d 159, 161 (2d Cir.2001). The legislative history of the passage of the

port of Summary Judgment, filed Apr. 23, 2010 (Docket # 134); Defendant Druckman & Sinel, LLP's ("The Druckman Firm") Support of Summary Judgment, filed Apr. 23,

plemental Reply in Support of Summary Judgment, filed Apr. 30, 2010 (Docket # 135).

FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." S. Rep. No. 95–382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696. The FDCPA sets forth examples of particular practices that debt collectors are forbidden to employ. *See* 15 U.S.C. § 1692e. The list, however, is non-exhaustive, and the FDCPA generally forbids collectors from engaging in unfair, deceptive, or harassing behavior. *See* 15 U.S.C. §§ 1692 *et seq.*

*Kropelnicki v. Siegel,* 290 F.3d 118, 127 (2d Cir.2002).

The relevant provisions of the FDCPA apply only to the activities of a "debt collector." *See* 15 U.S.C. §§ 1692e, 1692f, 1692g. A "debt collector" is a person "who regularly collects ... debts owed ... another" or a person involved "in any business the principal purpose of which is the collection of any debts." *Id.* § 1692a(6). In contrast, a "creditor" is a "person who offers or extends credit creating a debt." *Id.* § 1692a(4). As was noted in *Williams v. Citibank, N.A.,* 565 F.Supp.2d 523, 528 n. 6 (S.D.N.Y.2008), "[t]he FDCPA applies to debt collectors and not 'creditors' because debt collectors, unlike creditors, are not constrained in their actions by the risk that a negative reputation regarding debt collection practices might threaten their continued access to new borrowers." *Id.* (citing *Harrison v. NBD Inc.,* 968 F.Supp. 837, 841 (E.D.N.Y.1997) (discussing the legislative intent behind the FDCPA)). Finally, a consumer is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

To establish a violation under the FDCPA

(1) the plaintiff must be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a "debt collector," and (3) the defendant has engaged in · any act or omission in violation of FDCPA requirements.

*Healy v. Jzanus Ltd.,* 2002 WL 31654571, at *2 (E.D.N.Y. Nov. 20, 2002) (citing 15 U.S.C. § 1692(a)).

Importantly, the Second Circuit in *Kropelnicki* held that a plaintiff cannot prevail in a claim under the FDCPA merely by showing that the communication from the debt collector conveying information about a debt was transmitted to just anybody. Rather, the plaintiff "must first show that the [communication conveying information about the debt] was a communication *to her*"—that is, a communication to the debtor herself. 290 F.3d at 130 (emphasis in original).

## III.  *DISCUSSION*

D & S argues that (1) the doctrines of res judicata and collateral estoppel bar this suit, D & S Mem. at 6–13; (2) D & S is not a debt collector because it was enforcing a security interest, *id.* at 13–15; (3) D & S is not a debt collector because it was attempting to collect its own fees, *id.* at 15–16; (4) the Nov. 29 Letter is not a "communication under the FDCPA," *id.* at 16–17; (5) the Nov. 29 Letter was sent to Linear, not to the debtor, *id.* at 17–19; (6) the FDCPA never meant to protect individuals like the Schuhs, and its purpose would be thwarted if a violation was found, *id.* 19–25; (7) the Nov. 29 Letter is accurate, *id.* at 25–27; and (8) "any failure to

comply with the FDCPA was unintentional," *id.* at 27–28. Because the Schuhs have not shown that the Nov. 29 Letter was sent "to" either of them, *Kropelnicki,* 290 F.3d at 130, it is not necessary to reach D & S's other arguments.

As background, it is undisputed that after the Schuhs' successful bid at the March 23, 2006 foreclosure sale, they attempted to secure financing from Countrywide Mortgage in order to close on the property in accordance with the terms of the sale. *See* D & S Rule 56.1 Statement ¶ 39 (undisputed by plaintiffs); Compl. ¶ 140. Countrywide in turn engaged Linear Title, a title company, in connection with its loan to the Schuhs. *See* D & S Rule 56.1 Statement ¶ 39 (undisputed by plaintiffs); Closing Instructions, dated Oct. 5, 2006 (annexed as Ex. A to Heineman Reply Aff.); *see also* Schuh Dep. at 102 (in September 2006, the outstanding mortgage on the property "was trying to be resolved between the bank-their title representatives, Countrywide's title representatives and the Druckman law firm"). On September 28, 2006, Linear Title wrote an email to D & S directly—without copying the Schuhs—to inform D & S that Linear Title was responsible for "coordinat[ing] the purchase of the ... property from MERS" and that the Schuhs had made an application with Countrywide for a loan. *See* September Linear Title Email. This email referred to a closing scheduled for the next day. *Id.* As Linear Title sought extensions of the closing from D & S, Countrywide made clear in its communications with D & S that Linear Title was acting on Countrywide's behalf. *See* Fax from Matthew Waters, Countrywide, to Druckman & Sinel, dated Oct. 6, 2006 (annexed as Ex. K to Klotz Decl.), at 3 (Countrywide employee directs D & S to "forward correspondence [regarding closing extension] to my attorney at Linear Title"); Title Commitment: Linear Title and Closing, dated Nov. 21, 2006 (annexed as

Ex. A to Heineman Reply Aff.), at 3 (prepared by Theresa Giannavola of Linear Title and addressed to Countrywide). As already described, Linear Title, not the Schuhs, requested the payoff amounts that were ultimately sent in the Nov. 29 Letter from D & S. *See* Linear Title Fax. In accordance with these instructions, D & S sent the Nov. 29 Letter to a Rhode Island fax number, addressed to the person at Linear Title, Giannavola, who had requested the payoff figures.

The Schuhs bear the burden of proof as to their claim that D & S violated the FDCPA, *see generally Krawczyk v. Centurion Capital Corp.,* 2009 WL 395458, at *7 (N.D.Ill. Feb. 18, 2009); *Hollis v. Stephen Bruce & Assocs.,* 2008 WL 4570490, at *3 (W.D.Okla. Oct. 8, 2008), and thus bear the burden of showing that D & S sent the Nov. 29 Letter to them. But the Schuhs have marshaled no evidence to support this contention. To the contrary, the record is clear that the Nov. 29 Letter was sent to Giannavola at Linear Title. Schuh's own deposition testimony confirms the circumstances of the sending of the Nov. 29 Letter inasmuch as he testified that he did not recall any discussions with Countrywide about trying to get a closing scheduled, that he did not believe he knew who Linear Title was, and that he had never heard of Giannavola. Schuh Dep. at 129. He also testified that he had no recollection of ever having seen the Nov. 29 Letter. *Id.* at 131. Following his deposition, Schuh submitted an unsworn "Errata Sheet" in which he purported to correct the portion of his testimony in which he stated that he had no recollection of seeing the Nov. 29 Letter. *See* Errata Sheet at 2. His correction reads: "I did see letter. It was reason why any attempt to pay off mortgage was abandoned by direct payment to HSBC." *Id.* (grammatical errors in original). The reason given for the

correction was "further review and recollection and for clarity of testimony." *Id.*[6]

We will pretermit the question of whether Schuh can properly contradict his own deposition testimony through an errata sheet signed more than two weeks after D & S had filed its motion for summary judgment, *see, e.g., Desulma v. City of N.Y.*, 2001 WL 798002, at *4 (S.D.N.Y. July 6, 2001) ("to allow [plaintiff's] changes [on defendant's motion for summary judgment] would permit him to tailor his testimony to meet specific deficiencies in his evidence" and plaintiff's "contradictory deposition changes, submitted to the Court six months after [defendant] filed her motion for summary judgment, should not provide a basis for avoiding summary judgment.").[7] Even if we consider Schuh's corrections in conjunction with his original answers, nothing in his testimony or his corrections would provide sufficient evidence for a reasonable jury to conclude that the Nov. 29 Letter was sent to the Schuhs. Certainly, Schuh's own statements provide no evidence at all that D & S sent the letter to him. At best, Schuh claims (in the errata sheet) that he saw the letter at some unspecified time. But letters are frequently shared by a recipient with other interested parties, and the mere fact that Schuh saw it is not enough to

show it was sent "to" him. The letter was addressed to another individual and sent to a fax number in a state where the Schuhs were not even located. Virtually the only piece of evidence that would support the conclusion that the letter was sent to either plaintiff is the fact that the words "c/o Christopher Schuh" appear underneath Theresa Giannavola's name. But this would not allow a reasonable juror to infer that the letter was sent to Schuh. After all, it is unremarkable that Schuh's name appears on the letter inasmuch as Giannavola's request for the payoff statement referred to "the above borrower," and the only borrower's name in Giannavola's own fax requesting the letter was "Chris Schuh." *See* Linear Title Fax.

While Schuh asserts in a declaration that Linear Title was "acting on my behalf" when it sought the payoff figures, Schuh Decl. ¶ 44, this is merely a conclusory statement without any evidentiary support. In the context of the undisputed relationship between Countrywide and Linear Title, the statement does nothing to show that the response to Giannavola's request was sent "to" Schuh, as required by *Kropelnicki.* Nor does anything in Schuh's other testimony demonstrate that the plaintiffs even had contact with Linear Title with respect to the Nov. 29 Letter, let alone that the letter was sent "to" the plaintiffs.[8]

---

6. Schuh also testified at his deposition that the Nov. 29 Letter was sent in connection with his continuing efforts to close on the property as the purchaser—that is, as the successful bidder. *Id.* at 135. Schuh's "errata sheet" also corrects this testimony and asserts that he knew about Linear Title. His correction states: "[i]n November when Linear title faxed[ ] [a] request for information, [the] sale had been cancelled. I was seeking information for financing, to pay off [the] mortgage, not [to] close [the] referee sale." *Id.* Schuh's reason for this change is stated as "clarity of testimony." *Id.* Similarly, in a declaration submitted in conjunction with the summary judgment motion, Schuh asserts that "Linear Title acting on my behalf, for the first time sought pay-off figures." Schuh

Decl. ¶ 44. This statement is discussed further below.

7. At a minimum, the Court would have to consider both the original answers and the corrections. *See Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir.1997). Notably, at least one case in this Circuit has suggested that the reason, to "clarify," might be "insufficient to explain plaintiff's alteration of her answer[s]" to deposition questions. *Winston v. Marriott Int'l, Inc.*, 2006 WL 1229111, at *6 n. 2 (E.D.N.Y. May 8, 2006).

8. The parties dispute whether the purpose of obtaining the Nov. 29 Letter was to pay off the Schuhs' mortgage, *see* Schuh Decl. ¶ 44, or for the purpose of the Schuhs' "closing of

The Schuhs argue that Linear Title was their "agent" and that this distinguishes their own case from the Second Circuit's decision in *Kropelnicki*, which rejected an FDCPA claim by a debtor's mother based on a letter sent from a debt collector to the debtor's daughter. *See* Schuh Opp. Mem. at 10. To begin with, the assertion that Linear Title was Schuh's "agent" not only is conclusory and unsupported by evidence but also is belied by the record inasmuch as Linear Title is identified as *Countrywide*'s "settlement agent." *See, e.g.,* Closing Instructions, dated Oct. 5, 2006 (annexed as Ex. A to Heineman Reply Aff.). But this characterization of Linear Title is of no relevance anyway. Whether or not Linear Title could be characterized as the Schuhs' "agent" for some purpose does not answer the fundamental question of whether the Nov. 29 Letter was sent "to" the Schuhs. As already described, the letter was not sent to them and thus does not fall within the statute. This result is in accord with *Tromba v. M.R.S. Assocs., Inc.,* 323 F.Supp.2d 424, 425–26 (E.D.N.Y.2004), in which the debt collector faxed a set of loan documents with a cover letter addressed solely to the plaintiff's attorney. The Court ruled that the plaintiff had no cause of action under the FDCPA because the letter at issue there "was solely directed to her attorney and no threat was made regarding contact with the debtor herself." *Id.* at 428.

*Conclusion*

For the foregoing reasons, D & S's motion for summary judgment (Docket # 115) should be granted.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010).

Dated: June 29, 2010

New York, New York

---

the Property as the successful bidder at the March 2006 foreclosure sale," D & S Mem. at 2. But this dispute is irrelevant to the question of whether the Nov. 29 Letter was sent to the Schuhs, and thus it is unnecessary to resolve it.